UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

CAREY SMITH,

        Plaintiff,


    -versus-                                       INDEX NO. 6:18-cv-06658

THE STATE OF NEW YORK;                      ECF CASE
NEW YORK STATE CORRECTIONS
OFFICER ("CO") KYLE KENNEDY;
CO JOHN CRANCE; and
JOHN AND JANE DOE NEW YORK
STATE AGENTS NOS. 1-10,
individually and in their official capacities,

        Defendants.

-----------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT
OF PLAINTIFF'S MOTION TO FILE A
FIRST AMENDED COMPLAINT**


Moira Meltzer-Cohen
277 Broadway, Suite 1501
New York, NY 10007
347.248.6771
meltzercohen@gmail.com

## PRELIMINARY STATEMENT

This memorandum is respectfully submitted in support of Plaintiff's Motion for leave to file a first amended complaint, following initial disclosures and earnest, but unsuccessful attempts to come to a pretrial resolution.

## SUMMARY OF RELEVANT FACTS

Plaintiff Carey Smith timely filed this action against Defendants Kennedy and Crance. Proceedings were initially delayed by the need for Defendants to obtain counsel. All counsel have been in touch, and have discussed the case, made initial disclosures, and, pursuant to a settlement demand, contemplated the way toward a pretrial resolution. In the midst of these discussions, the COVID-19 pandemic struck, resulting in some further delay.

Starting in June, 2016, well before filing the initial Complaint, counsel began investigating the facts underlying the instant case in an effort to identify Defendants. These efforts included requesting medical records, submitting two requests under New York's Freedom of Information Law ("FOIL"), and making phone calls to the Department of Corrections and Community Supervision, Parole, and eventually, opposing counsel. Some of these requests resulted in the disclosure of the names of Officers Kennedy and Crance. None of them resulted in the disclosure of the names of Sergeant Joseph Duda or Officer Steve Mahunik. In fact, although some evidence suggested that four officers had been involved in Ms. Smith's transport, when counsel called Five Points Correctional Facility to inquire as to the names of anyone involved in the September 18, 2015 assault and subsequent transport of Ms. Smith, she was directly informed that "the person" whose name she sought was CO Crance. As a consequence, counsel named only CO Crance and CO Kennedy in the initial Complaint, and included Doe

Defendants in the likely event that the true names and roles of other properly named Defendants would be revealed in the course of discovery. Indeed, eventually this came to pass.

Initial disclosures revealed the names of two Doe defendants. Confidential initial disclosures also revealed critical information demonstrating a unity of interest among all Defendants.

Defendants all knew and had significant evidence regarding the events complained of by Plaintiff, and were possessed of this knowledge and evidence from the time of the relevant events, nearly three years prior to commencement of this action. Plaintiff, upon discovering this evidence, nevertheless sought to resolve the matter before escalating it, by amending the complaint to substitute the true names of the Doe officers. All counsel contemplated and agreed that in the event that settlement negotiations failed, Plaintiff would seek to amend the complaint to substitute the true names of the Doe defendants. This is the pass at which we have arrived.

## POINT I

**Leave to amend should be granted under Fed.R.Civ.P. 15.**

The standards applicable to a motion to amend a pleading are well-settled. Leave to amend should be freely granted when justice so requires. Fed.R.Civ.P. 15(a). As the United State Supreme Court has emphasized:

> This mandate is to be heeded. If the underlying facts or circumstanced relied upon by the Plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claims on the merits. In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the amendment, futility of the amendment, etc. . – then leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962).

Rule 15 of the Federal Rules of Civil Procedure allows a party to amend a pleading to add parties or claims. Fed. R. Civ. P. 15(a)(1) – (2). "A party may amend the party's pleading once as a matter of course" very early on after filing; otherwise a party may amend the pleading "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). Such a request is generally granted. See, e.g., *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir.1988).

It is well settled that "the grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court." *Zenith Radio Corp. v. Hazelnite Research, Inc.*, 401 U.S. 321, 330 (1971). Furthermore if the plaintiff has colorable grounds for seeking relief, the motion to amend should be granted. *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 783 (2d Cir.1984)). In keeping with this directive, the Second Circuit has emphasized that "[a] motion to amend should be denied only for reasons such as undue delay, bad faith, futility of amendment, and perhaps most important, the resulting prejudice to the opposing party." *Spier v. Ferber*, No. 89-1657, 1992 U.S. Dist LEXIS 13021, at 27 (S.D.N.Y. 1992), *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993). "As justice is the foundation of the judicial system, so then granting leave must be the default position of the Court." *Asset Mgmt. Assocs. v. Emerson Telcom. Prods. LLC*, 2011 U.S. Dist. LEXIS 9434 (E.D.N.Y. 2011). Thus it is "rare" that leave to amend should be denied. *Riccuti v. NYC Transit Authority*, 941 F.2d 119, 123 (2d Cir. 1991).

The primary factors the courts consider are the interests of justice and possible prejudice to the non-moving party. *Milanese v. Rust-Oleum Corp.,* 244 F.3d 104 (2d. Cir. 2001)(motion must be granted unless there is bad faith or undue delay). "It is entirely contrary to the spirit of

the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of mere technicalities." *Foman v. Davis*, *supra*. In order to determine what constitutes prejudice the Court should consider whether the assertion of the new claim or renaming of the party would require the opponent to expend significant additional resources to conduct discovery and prepare for trial and whether the amendment would significantly delay the resolution of the dispute. *Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir. 2008).

Additionally, an amendment must be able to "relate back" to the originally-filed complaint, such that the interests in protecting potential defendants from notice-failures is balanced with the preference expressed in the Federal Rules of Civil Procedure in favor of resolving disputes on their merits. *Krupski v. Costa Crociere S. p. A.*, 130 S.Ct. 2485 (2010), at 2488.

The United States Supreme Court and the Court of Appeals for the Second Circuit have adhered to this liberal standard in granting requests to amend, especially where, as here, discovery has not commenced in earnest. *State Teachers Retirement Bd. v. Fluor Corp.*, 654 F. 2d 843, 856 (2d Cir. 1984).

Here, an assessment of the Rule 15 factors weighs in favor of allowing plaintiffs to amend their complaint. First, there is no undue delay in making this motion as there has not been a previously amended complaint, this motion is timely under the discovery schedule, the parties have not done any discovery beyond initial disclosures, and all counsel conferred on and agreed to briefly delaying this motion until attempts at settlement could be pursued.

Second, the defendants will not be prejudiced should the Court grant plaintiff's application. As stated above, the parties have not conducted any meaningful discovery. Accordingly, none of

the parties will be required to re-depose any witnesses or amend any discovery demands, and the defendants will not be forced to "expend significant resources" as a result. Essentially, should the Court grant plaintiffs application, the defendants will remain in roughly the same position they are in now.

Third, there is no bad faith in plaintiff's moving to amend. Plaintiff is simply attempting to clarify the existing pleading by refining the complaint with information previously possessed exclusively by Defendants.

Here, Plaintiff seeks, with the full knowledge of Defendants and opposing counsel, to substitute the true names of Doe Defendants, and to add allegations that serve only to amplify existing allegations and causes of action. The existence and roles of these Officers are already well-known to counsel, to the relevant agencies, and to both the existing and proposed Defendants. No prejudice can accrue to the proposed Defendants. No novel allegations or causes of action are proposed. The proposed additional allegations and names simply set forth more accurately the events that form the basis of this matter – in terms that were disclosed by Defendants to Plaintiff in the course of initial disclosures. The information thus disclosed was in the exclusive possession of Defendants, and was disclosed only after Plaintiff's diligent but unsuccessful efforts to unearth it, starting more than two years prior to commencing litigation. Each new allegation relates to the events already described in the existing complaint, and simply make the complaint more clear and explicit with respect to each Defendant's liability. No new theories of liability are proposed. No allegations unfamiliar to Defendants are made. And no persons not already identified as a result of the complained-of events are named.

Finally, the proposed changes relate back. In this case, the primary proposed amendment will be to change the names of the parties against whom the claims are asserted. The notice

elements of Rule 15(C)(1)(C)(i)-(ii) — the "linchpin" of relation back doctrine — have been fully satisfied. *Schiavone v. Fortune*, 477 U.S. 21, 31 (1986). Notice must be given within the limitations period so that the proposed defendant will not be prejudiced in defending the case on its merits. A court may impute knowledge of a suit to a late-added defendant through their attorney by demonstrating "the attorney knew or should have known that the additional defendant would be added to the existing suit." *Byrd v. Abate*, 964 F. Supp. 140, 146-47 (S.D.N.Y. 1997).

Under the constructive notice doctrine, the court can impute knowledge of a lawsuit to a new defendant government official through his attorney, when the attorney also represented the officials originally sued, so long as there is some showing that the attorney knew that the additional defendant would be added to the existing suit. *Rogers v. Miller*, No. 16CIV3610AMDVMS, 2017 WL 6542459, at *5 (E.D.N.Y. Dec. 21, 2017)(citing *Berry v. Village of Millbrook*, No. 09 Civ. 4234 (KMK), 2010 WL 3932289 at 5 n.6 (S.D.N.Y. Sept. 29, 2010)). A newly added defendant is not prejudiced by the lack of notice if his attorney has already begun preparing a defense for the named defendant during the limitations period. *Velez v. Fogarty*, No. 06 Civ. 13186 (LAK) (HBP), 2008 WL 5062601 at *6 (SNDY Nov. 20, 2008).

In the instant case, the original Complaint identified two named Officers, but describes events in which four Officers were involved, and who are therefore known to themselves and the state. The state and Defense counsel were all aware of this fact, and aware of the fact that the identities of two of the Doe defendants would eventually become known to Plaintiff, and would certainly be substituted. Plaintiff, simply by complaining of the relevant events has thus provided sufficient notice. The parties to be brought in by amendment, or at least their attorney, certainly received notice of the action within the Rule 4(m) period such that they will not be prejudiced in

defending against the suit on the merits (see 15(c)(1)(C)(i)). Additionally, those parties to be properly named certainly knew or should have known that the action would have been brought against them but for the plaintiffs' inability to ascertain their true identities (see 15(c)(1)(C)(ii)).

Leave to amend should be granted under Rule 15.

## POINT TWO

**Rule 15(c)(1)(A) and CPLR §1024 allow amendment and relation back where, as here, Plaintiffs exercised all possible diligence and Doe defendants were described so as to fairly apprise them that they were the intended defendants.**

FRCP Rule 15(c)(1)(A) allows Plaintiffs to utilize CPLR §1024 for purposes of determining relation back, because it is more permissive than the FRCP Rule 15(c). Under either standard, Plaintiff believes this Court should grant leave to amend.

The Western District recognizes that N.Y.C.P.L.R. §1024 allows for "John Doe Pleadings" in Section 1983 cases where individuals cannot be immediately identified at the time of filing a complaint. However, upon coming to know the parties' true identities, the complaint is to be amended accordingly, and the substitutions deemed *nunc pro tunc*. For this to be accomplished,

> (1) The party must exercise due diligence, prior to the running of the statute of limitations, to identify the defendant by name, and
>
> (2) the party must describe the John Doe party in such form as will fairly apprise the party that [they are] the intended defendant.
> *Hogan v. Fischer*, 518-19 (2d Cir. 2013).

Under the complex of standards set forth, this Court should give leave for Plaintiff to amend the names of the Doe defendants. The inquiry set forth above, under which the Court may at its discretion grant leave to amend, can easily be met.

First, as described in the accompanying declaration of counsel, many steps were taken to discern the identities and roles of Defendants in this matter. As early as June, 2016, counsel submitted a FOIL request seeking information about a previous incident of force used against Plaintiff, in an effort to determine whether any of the same officers had been involved. Not long after, Plaintiff executed HIPAA release forms and a general release of information so that counsel could continue to seek information about the events of September 18, 2015. Counsel requested and received medical records, and made many phone calls to, *inter alia,* DOCCS Counsel, Parole, and the FOIL Officer, endeavoring to determine the names of those involved, and then seeking guidance as to the best way to discover those names. She submitted a FOIL on January 16, 2017, seeking any and all information:

> **in the possession of DOCCS, the Brooklyn 4 Office, and any other office under your purview, concerning the entire time starting from the above-described transport, arrival, and transport to the hospital, through any meetings with investigators, and up to the present**, including but not limited to the following documents: (1) reports and transcripts generated from meetings, emails, letters, or phone calls with Ms. Smith or about Ms. Smith; (2) any photographs, drawings, sketches, or images of any kind used to conduct interviews or document her condition; (3) any reports, files, memoranda, videos, audiotapes, or internal communications generated by interviews **and** follow-up interviews of Ms. Smith, her transporting officers, and anyone who observed the condition in which she arrived at Brooklyn 4."

Records were returned subsequent to these FOIL requests, and while many of those records were useful, all were heavily redacted, and none of them revealed the true names of the missing Does.

Moreover, on September 13, 2018, counsel called Five Points Correctional Facility, and directly asked that the person with whom she spoke, who identified himself as the Watch Commander, check the duty roster from September 18, 2015 to see who specifically was working or would have been present during Ms. Smith's transport and related incidents. The

Watch Commander informed counsel that he remembered that incident. He then told her that "the person" whose name she was seeking was "CO John Crance," and continued to inform her, in sum and substance, "he is no longer with DOCCS."

Counsel exercised diligence in seeking the identities of the Doe Defendants, and continued to seek (and receive) records *after* the filing of the initial complaint, none of which yielded unredacted identifying information about the Doe Defendants. Counsel was also incorrectly advised that only a single person besides Kyle Kennedy had been involved in the relevant incident. Nevertheless, Plaintiff pled Doe Defendants, because Plaintiff knew there had been more Officers involved, even if nobody in possession of their true names would disclose those names voluntarily.

Thus, the initial complaint included the names of the two officers Plaintiff clearly remembered, and also included a number of Doe defendants, described as employees of "DOCCS… and/or OIG… who knew about and/or investigated Plaintiff's beating at the hands of Defendant Crance, and Defendant Kennedy's failure to intervene with respect to the same…". See Ex. 1 ¶9.  Sergeant Doe was an employee of DOCCS, and the supervisor for the transport. Officer Roe was an employee of DOCCS, and knew about Defendant Crance's beating of Plaintiff and CO Kennedy's failure to intervene. The allegations in the initial complaint, and indeed, given the information already possessed by the state, the caption itself, was sufficient to "fairly apprise" Duda and Mahunik that they were likely to be named as Defendants, once any amount of discovery revealed their involvement. The inclusion of Doe defendants signaled that there were as-yet unidentified defendants, and the description of the events giving rise to the complaint identified these events as the same ones in which Duda and Mahunik had participated

and about which they had already been questioned by OSI[1]. See *Duncan v. City of New York*, 11-CV-3901 (ENV)(JO), 2014 WL 3530858, at *3 (E.D.N.Y. July 15, 2014) (finding that a John Doe was described in enough detail where the Plaintiff made it clear that there was an unknown party, and the initial complaint described "the precise conduct" alleged.)

It bears noting furthermore that at the time of these events Ms. Smith had been held in a suicide room, under taxing mental conditions, for several weeks, and in the course of these events, was hit in the head with great force. That she did not at the time have a clear memory of the Doe Officers who, did not actively participate in assaulting her, but passively failed to intervene in the assault, is simply further evidence of harm, and not a failure of Plaintiff's intent to prosecute, defendants' liability, or counsel's diligence.

Defendants and their counsel have been on notice, both because of the instant complaint, and also because of the OSI investigation, of the existence, identities, and roles of the two Doe Defendants whose true names we propose to substitute. Plaintiff learned the true names of these Doe Defendants in the course of initial disclosures, and all counsel have discussed the eventuality that, in the event of failed settlement negotiations, Sergeant Duda and CO Maunik will be added to this complaint. That is to say, any delay in doing so was not concealed or in any manner prejudicial, but rather was contemplated and agreed upon by counsel in the service of seeking pretrial resolution. This was not a permanent decision not to name someone known to be liable, but was undertaken in consideration of swift and expedient resolution for all parties, including Defendants and the Court.

---

[1] It is clear from redacted but <u>NONCONFIDENTIAL</u> records obtained pursuant to FOIL that OSI conducted an investigation involving the named and Doe Defendants.

Counsel exercised due diligence, and the initial Complaint is absolutely sufficient to have fairly apprised Doe Defendants that they were the intended Defendants. Leave to amend should therefore be granted under CPLR §1024.

**The claims against Duda and Mahunik relate back under C.P.L.R. 203.**

Under CPLR §203, New York courts allow claims against a new defendant to relate back to timely filed pleadings when:

> (1) the new claim arose out of the same conduct, transaction or occurrence as the original allegations;
>
> (2) the new party is united in interest with the original defendant, and by reason of that relationship can be charged with such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits; and
>
> (3) the new party knew or should have known that, but for a mistake as to the identity of the proper parties, the action would have been brought against him as well.

*Strada v. City of New York*, No. 11-CV-5735 MKB, 2014 WL 3490306 at *6 (E.D.N.Y. July 11, 2014)(quoting *Fisher v. County of Nassau*, No. 10-CV-0677, 2011 WL 4899920, at *5(E.D.N.Y. Oct. 13, 2011)).

The first element is easily applied and rarely litigated. *DaCosta v. City of New York*, 296 F. Supp. 3d 569, 586 (E.D.N.Y. 2017). Here there seems to be no dispute as to the fact that the allegations are identical to what was initially pled. Neither can there be any dispute that the primary alteration to the complaint is the substitution of two true names for Doe defendants.

The second element, unity of interest, is met when "the interest of the parties in the subject-matter is such that they will stand or fall together and that judgment against one will similarly affect the other." *Maccharulo v. Gould*, 643 F. Supp. 2d 587, 597 (S.D.N.Y. 2009). As is indisputably the case here, a unity of interest should be found between an officer and their agency in a Section 1983 claim due to their employer-employee relationship. *Llerando-Phipps v. City of New York*, 390 F.Supp.2d 372, 385 (S.D.N.Y. 2005). Likewise, unities of interest have

also been found when one party indemnifies another. *Strada* at *7-8 (E.D.N.Y. July 11, 2014), (*see also DaCosta* at 586 (discussion of indemnification)). There can be no question but that the Doe defendants are Corrections Officers employed and indemnified by DOCCS, and are or will be represented by counsel appointed by the Office of the Attorney General.

Furthermore, the proposed and named Defendants are all alleged to have participated in or failed to intervene in the same incident. Their fates rise or fall based on a finding of fact regarding a single incident in which all of them are known to have been involved. Here, unlike *JCG v. Ercole* -- a case involving five broad categories of injury and more than twenty proposed defendants -- the claims against various Defendants will necessarily stand or fall together. 2014 WL1630815. Likewise, in the instant case, all Defendants know each other and are on notice of each of their involvement or potential involvement in this case precisely because they all worked together for DOCCS, and were all present and investigated as a result of the underlying incident. *Cf: Simmons v. Mason*, 2019 WL 4525613 (finding that a proposed Defendant who did not work for the same organization as named Defendants had no unity of interest or possibility of constructive notice.).  No further unity of interest need be alleged for the second element to be satisfied.

The third element will *not* be met when a plaintiff attempts to make a relation back in bad faith. Bad faith is found when the plaintiff "intentionally decides not to assert a claim against a party known to be potentially liable." *Buran v. Coupal*, 87 N.Y.2d 173, 181 (1995).  Here, Plaintiff has endeavored to indicate in every available manner that she wishes to name the correct parties, and as described above and in the annexed declaration of counsel, has diligently pursued this information for several years, both preceding and following the filing of this suit. That she was unable to identify those parties, whose identities were certainly known to and

ultimately disclosed by the Defense – in a manner calculated to make naming them as defendants more difficult -- cannot be attributed to dilatory motive or bad faith on her part.

When bad faith is not found, a court will look at whether the new party knew or should have known that, but for a mistake as to the identity of the proper parties, the action would have been brought against him as well. Whether this element is met turns on the interpretation of "mistake". *DaCosta* at 587. Often, district courts in the Second Circuit give "mistake" in CPLR §203 the same meaning as "mistake" in FRCP Rule 15(c)(1)(C).This narrow view holds that the failure to identify a party in an original pleading demonstrates a lack of knowledge and not a mistake of identity. Id.

Plaintiff should be given leave to amend so as to "test her case on the merits," per *Foman v. Davis*, *supra*.

## CONCLUSION

WHEREFORE, for all the foregoing reasons this Court should issue an order granting Plaintiff leave to file a first amended complaint and granting such other and further relief as this Court deems just and proper.

Dated: NEW YORK, NY
November 16, 2020                    Respectfully submitted,

_____/S/

Moira Meltzer-Cohen
277 Broadway, Suite 1501
New York, NY 10007
347.248.6771
meltzercohen@gmail.com