**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

| | |
|---|---|
| **CAREY SMITH,** | **FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |
| Plaintiff, | |
| -versus- | 6:18-cv-06658 (DGL)(MJP) |
| **NEW YORK STATE CORRECTIONS OFFICER ("CO") KYLE KENNEDY; CO JOHN CRANCE; SGT. SGT. JOSEPH DUDA; and CO STEVE MAHUNIK; in their individual capacities,** | **ECF CASE** |
| Defendants. | |

-----------------------------------------------------------------X

Plaintiff CAREY SMITH, through her attorney MOIRA MELTZER-COHEN, as and for her First Amended Complaint in this matter, states and alleges as follows:

## PRELIMINARY STATEMENT

1.  Plaintiff brings this action for compensatory damages, punitive damages, and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988, for Defendants' violations of her civil rights as secured by said statutes and the Constitution of the United States.

## JURISDICTION AND VENUE

2.  This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988, and the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.

3.  This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3-4).

4.  Venue is proper pursuant to 28 U.S.C. §1391(b) in that Plaintiffs' claims arose in the Western District of New York.

## PARTIES

5. At all times relevant herein, Plaintiff CAREY SMITH was an African-American transgender woman and a resident of New York State.

6. Defendant THE STATE OF NEW YORK, through its agency the New York State Department of Corrections and Community Supervision ("DOCCS"), is authorized under the laws of the State of New York to maintain correctional facilities, and Correctional Officers ("COs"), which act as its agents, and for which it is ultimately responsible.

7. The Defendant State assumes the risks incidental to the maintenance of correctional facilities and the employment of correctional officers and others under its employ.

8. At all times relevant herein, Defendants CO KYLE KENNEDY, CO JOHN CRANCE, SERGEANT JOSEPH DUDA, and CO STEVE MAHUNIK were officers, employees, and agents of DOCCS.

9. At the time of Plaintiff's beating and during the related investigations and proceedings, Defendant DUDA was a Sergeant who had duties to supervise and/or discipline the other Defendants regarding their treatment of Ms. Smith and in connection with related investigations and proceedings.

10. At all times hereinafter mentioned the Defendants were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State of New York.

11. Each and all of the acts of the Defendants alleged herein were done by said Defendants while acting within the scope of their employment by DOCCS.

12. Each and all of the acts of the Defendants alleged herein were done by said Defendants while acting in furtherance of their employment by DOCCS.

13. At all times relevant herein, as set forth more fully below, Defendants' actions and/or failures to act were malicious, intentional, knowing, and/or with a deliberate indifference to or a reckless regard for the natural and probable consequences of their acts and/or omissions.

14. Defendants were each and all responsible, in whole and/or in part, for the planning for and/or creation, promulgation, implementation, and/or enforcement of the unconstitutional policies, practices and/or customs complained of herein, and/or condoned, acquiesced in, adopted, and/or approved of the same, through their acts and/or failures to act, as set forth more fully below.

15. Each individually named Defendant is sued in their individual capacity.

## **FACTS**

16. On September 18, 2015, Ms. Smith was incarcerated at Five Points Correctional Facility ("Five Points") located in Romulus, New York, in Seneca County.

17. On September 18, 2015, Ms. Smith had "maxed out", or served the maximum possible amount of time on her sentence.

18. On September 18, 2015, Ms. Smith was scheduled to be released to parole supervision.

19. On September 18, 2015, Ms. Smith was scheduled to report to parole supervision at Brooklyn Area IV in person on September 21, 2015.

20. Upon information and belief, prior to September 18, 2015, DOCCS and/or parole officials had determined to release Carey directly to a Parole Officer at Brooklyn Area IV on September 18, 2015.

3

21. On September 18, 2015, Ms. Smith was subjected to a "camera order" which required DOCCS COs to record her every time she exited her cell for the duration of the time she was not in the cell.

22. On September 18, 2015, Ms. Smith was called out of her cell at Five Points and given a khaki inmate uniform to put on.

23. Defendants DUDA, MAHUNIK, KENNEDY and CRANCE were present at that time.

24. Ms. Smith was informed that she would be released.

25. She was escorted by all defendants to the SHU strip-frisk room, where she was strip searched by Defendant Crance and given a khaki uniform to put on.

26. Ms. Smith put the uniform on.

27. Ms. Smith was placed in restraints.

28. Defendants Duda, Kennedy, and Crance then escorted Ms. Smith to the Infirmary, Room 2.

29. At the infirmary, Defendant Crance removed Ms. Smith's restraints.

30. Defendant Crance then told Plaintiff in sum and substance that she would need to take a shower because she "stunk."

31. Ms. Smith is transgender.

32. Defendants were all aware on September 18, 2015 that Ms. Smith is transgender.

33. Prior to September 18, 2015, Ms. Smith had been subjected to violence and abuse at Five Points related to being transgender.

34. Prior to September 18, 2015, Defendants Kennedy and Crance all knew that Ms. Smith was transgender.

35. Prior to September 18, 2015, Ms. Smith had been subjected to violence and abuse while stripping and/or showering at Five Points.

36. Prior to September 18, 2015, Defendants Kennedy and Crance had each made harassing comments and physical contact with Ms. Smith.

37. Ms. Smith refused to shower in front of Defendants.

38. Defendant Crance instructed her to enter an area with a bed and shower.

39. Ms. Smith sat down on the bed.

40. Defendant Crance followed her into the area with the bed and shower.

41. Defendant Crance or Defendant Duda told Defendant Kennedy to turn off the videocamera.

42. Defendant Kennedy turned off the videocamera.

43. Defendant Crance then leaned over and punched Ms. Smith in the face several times.

44. Defendant Crance's punches knocked Ms. Smith onto her back across the bed.

45. As a result of Defendant Crance's punches, Ms. Smith fell off the bed onto the floor.

46. Defendant Crance crossed the bed and continued punching Ms. Smith in the face while she was on the ground.

47. On information and belief, at least Defendants Kennedy and Duda observed Defendant Crance beating Ms. Smith.

48. Defendant Kennedy had an opportunity to stop Defendant Crance from beating Ms. Smith.

49. Defendant Kennedy did not intervene to stop the beating.

50. Defendant Kennedy just stood there and watched.

51. Defendant Duda had an opportunity to stop Defendant Crance from beating Ms. Smith.

52. Defendant Duda did not intervene to stop the beating.

53. Defendant Crance then yelled at Ms. Smith, in sum and substance, "Now you'll take a shower and we're taking you to Brooklyn."

54. Ms. Smith then got in the shower.

55. Defendants Crance, Duda, Mahunik, and Kennedy stood outside and watched her take a shower.

56. Ms. Smith exited the shower and then dressed.

57. Defendant Crance or another CO then placed Ms. Smith in handcuffs and shackles around her ankles.

58. The shackles around Ms. Smith's ankles were very tight.

59. Ms. Smith complained to Defendants Crance, Duda, Mahunik, and Kennedy that the shackles were too tight.

60. They ignored that complaint.

61. Defendants Crance, Duda, and Kennedy brought Ms. Smith out of the Five Points facility.

62. Ms. Smith was loaded into a transport vehicle.

63. Before they left the parking lot, Ms. Smith threw up in that vehicle, including vomiting blood, as a result of which DOCCS officers had to switch her into a second transport vehicle.

64. Defendants Kennedy, Duda, Mahunik, and Crance sat in the van with Ms. Smith all the way to Brooklyn.

65. At that time, Ms. Smith's face was swollen.

66. At that time, Ms. Smith's left eye was swollen and blackened.

67. At that time, the white of Ms. Smith's left eye was bright red.

68. At that time, the front of the white shirt Ms. Smith was wearing had Ms. Smith's blood on it.

69. During the trip from Romulus, New York to Brooklyn, Ms. Smith communicated to Defendants Crance, Duda, Mahunik, and Kennedy that the shackles around her ankles were too tight; that her feet were turning blue; that the shackles were rubbing skin off her ankles; that she had lost feeling in her feet.

70. Defendants Crance, Duda, Mahunik, and Kennedy did not loosen the shackles until they took them off at Parole Area IV.

71. Upon arriving at Parole Area IV, Parole Officers noted the blood on Ms. Smith's shirt and her swollen black eye.

72. One Parole Officer noted: "Subject had blood on his [sic] white shirt. His [sic] left eye was swollen blacken with blood in the corner of the left eye by [her] nose. … He [sic] reported to me that he [sic] was beaten by one of the correctional officers that transported him [sic] to the office. He [sic] reported that he [sic] wanted to go to the hospital."

73. Another PO noted: "PO noted that p's left eye was blood shot red and swollen and darkened. P's white shirt had blood stains. P state that this occurred when the correction officers punched her in the nose."

74. Ms. Smith complained to Parole Officers that Defendant Crance had beaten her.

7

75. As a result of seeing her obvious injuries and because of Ms. Smith's complaints, Parole Officers sought out and questioned Defendants Crance, Kennedy, Duda, and Mahunik.

76. Upon information and belief, one or more of the Defendants reported that Ms. Smith had fallen.

77. Ms. Smith was subsequently transported to Methodist Hospital in Park Slope, Brooklyn.

78. Medical records from Methodist note: "left eye bruised, S/P assault today by officers."

79. As a result of Defendant Crance's beating Ms. Smith, Ms. Smith's face was bloody and bruised.

80. The swelling on Ms. Smith's face lasted approximately two weeks.

81. The bruising on Ms. Smith's face lasted approximately three weeks.

82. Defendant Crance's beating Ms. Smith caused a surgically implanted silicon cheek implant to shift out of position, resulting in soft tissue damage in Ms. Smith's face and a change to the appearance of Ms. Smith's face.

83. The change to the appearance of Ms. Smith's face lasted close to two years.

84. Also as a result of Defendant Crance's beating Ms. Smith, Ms. Smith suffered trauma to her eye, which swelled shut for a period of more than a week, and remained bloody for nearly a month.

85. As a result of having been forced to endure the tight ankle shackling during the trip from Romulus, NY to Brooklyn, Ms. Smith suffered abrasions and bruising to both ankles, which made it painful to wear shoes, and difficult for Ms. Smith to leave the house or walk, for more than four weeks.

86. Plaintiff complained to Parole Officers about the beating when she arrived at Brooklyn Area IV.

87. Plaintiff promptly complained to OIG about the beating.

88. Upon information and belief, the video footage that Defendant Crance captured on the date of Ms. Smith's beating was subsequently damaged or destroyed at some point prior to or during the OIG's investigation.

89. Plaintiff intends to pursue discovery to determine whether and/or the extent to which Defendants were involved in damaging or destroying the video footage.

## CLAIMS FOR RELIEF

## FIRST CLAIM: EXCESSIVE FORCE – AGAINST ALL DEFENDANTS

## FOURTH, EIGHTH, AND FOURTEENTH AMENDMENTS THROUGH 42 U.S.C. § 1983

90. Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

91. Defendant Crance injured Plaintiff by repeatedly striking her in the face.

92. Plaintiff was not involved in crime, let alone severe crime, when Defendant Crance repeatedly punched her.

93. Plaintiff did not present an immediate threat to the safety of the officers or others.

94. Plaintiff did not actively resist or seek to flee.

95. There was no legitimate penological purpose served by Defendant Crance's repeatedly punching Plaintiff.

96. Defendant Crance struck Plaintiff maliciously.

97. There was no need for Defendant Crance to use such force on Plaintiff.

9

98. The amount of force Defendant Crance used was disproportionate given the lack of need to use any force.

99. There was no justification for Defendant Crance to use such force on Plaintiff.

100. The level of physical force employed by Defendant Crance against Plaintiff was objectively unreasonable in light of the facts and circumstances.

101. Defendants Kennedy, Duda, and Mahunik failed to intervene to prevent or stop Defendant Crance's repeatedly punching Plaintiff.

102. Defendants Kennedy, Duda, and Mahunik failed to appropriately render aid to Ms. Smith.

103. Defendants Kennedy, Duda, and Mahunik failed to report Ms. Smith's injuries to the appropriate supervisory or administrative staff.

104. Additionally, Defendant Crance or another CO placed handcuffs and leg shackles on Plaintiff that were far too tight.

105. Although Plaintiff complained to Defendants Crance, Duda, Mahunik, and Kennedy repeatedly over the course of a period of hours about the tightness of the shackles, they did not loosen or remove the shackles.

106. The manner in which Plaintiff was shackled, and the length of time Plaintiff was shackled, injured Plaintiff.

107. As a result of the foregoing, Plaintiff suffered bodily injury, pain and suffering, emotional injury, humiliation, costs and expenses, and was otherwise damaged and injured.

## SECOND CLAIM

**AGAINST SERGEANT DUDA FOR FAILURE TO SUPERVISE AND/OR DISCIPLINE DEFENDANTS**

108. Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

109. Defendant Duda knew about Plaintiff's beating at the hands of Defendant Crance, and his and Defendants failures to intervene with respect to the same, and failed to supervise or discipline the other Defendants.

110. Defendant Duda failed to take any steps to remedy the violations after learning of them through his direct observation and/or through or as a result of Plaintiff's report.

111. Defendant Duda was grossly negligent in supervising subordinates who committed the wrongful acts, namely, the other Defendants.

112. Defendant Duda exhibited deliberate indifference to Plaintiff's rights by failing to act on the reports and other evidence that the beating had occurred.

113. As a result of the foregoing, Plaintiff suffered bodily injury, pain and suffering, emotional injury, humiliation, costs and expenses, and was otherwise damaged and injured.

**JURY DEMAND**

114. Plaintiff demands a trial by jury in this action of all issues pursuant to Fed. R. Civ. P. 38(b).

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays for the following relief:

115. Compensatory damages against the Defendants jointly and severally;

116. Punitive damages against the individual Defendants;

117. Attorney's fees and costs pursuant to 42 USC §1988; and

118. Such other and further relief as the Court deems just and proper.

DATED:   Brooklyn, New York
              January 2, 2021

                                        Respectfully submitted,

                                        ____/S/_____
                                        Moira Meltzer-Cohen
                                        *Attorney for Plaintiff*
                                        277 Broadway, Suite 1501
                                        New York, NY. 10007
                                        347-248-6771