**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X

**CAREY SMITH,**

　　　　　　**Plaintiff,**

　　　**-versus-**

　　　　　　　　　　　　　　　　　　**6:18-cv-06658 (DGL)(MJP)**

**NEW YORK STATE CORRECTIONS**
**OFFICER ("CO") KYLE KENNEDY;**
**CO JOHN CRANCE;**
**CO STEVE MAHUNIK; and SGT. JOSEPH DUDA,**
**in their official capacities,**

　　　　　　**Defendants.**
----------------------------------------------------------------X

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT DUDA, MAHUNIK,**
**AND KENNEDY'S MOTION TO COMPEL, AND FOR A PROTECTIVE ORDER,**
**PURSUANT TO THE FEDERAL RULES OF CIVIL PROCEDURE**

_____
Moira Meltzer-Cohen

_____
Gideon Oliver
*Attorneys for Plaintiff*
277 Broadway, Suite 1501
New York, NY 10007
(347) 248-6771

DATED:　　　November 20, 2023
　　　　　　　NEW YORK, NY

i

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT**

**STATEMENT OF FACTS**

**ARGUMENT**

       **POINT 1.**    **THE COURT SHOULD DENY DEFENDANTS MOTION TO COMPEL A SECOND DEPOSITION AS MOOT, AS PLAINTIFF HAS ALREADY CONSENTED TO A SECOND DEPOSITION.**

       **POINT 2.**    **THIS COURT SHOULD DENY DEFENDANTS MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS THAT ARE PRIVILEGED, AND THAT DO NOT BEAR ON ANY CLAIM, DEFENSE, OR DAMAGES ISSUE.**

       **POINT 3.**    **THIS COURT SHOULD ISSUE A PROTECTIVE ORDER COMPELLING DEFENDANTS TO DESTROY IMPROPERLY DISCLOSED RECORDS AND LIMITING THE SCOPE OF THE DEPOSITION.**

       **CONCLUSION**

## Table of Authorities

### <u>Cases</u>

*Bamonte v. Charatan*,
No. 22CIV0795KMKJCM, 2023 WL 4201416 (S.D.N.Y. June 27,
2023)………………………………………………………………………..14

*Benitez v. Lopez*,
No. 17-CV-3827-SJ-SJB, 2019 WL 1578167, at *2 (E.D.N.Y. Mar. 14,
2019)…………………………………………………………………………..6

*In re Consol. RNC Cases*,
No. 04-cv-7922 (RJS), 2009 U.S. Dist. LEXIS 40293, 2009 WL 130178 (S.D.N.Y.
Jan. 8, 2009)…………………………………………………………………10, 11

*Duarte v. St. Barnabas Hospital*,
341 F.Supp.3d 306, 321 (S.D.N.Y. 2018)……………………………………… 9

*E.E.O.C. v. Nichols Gas & Oil, Inc.*,
256 F.R.D. 114, 121 (W.D.N.Y. 2009)………………………………………8, 12

*EEOC v. First Wireless Group, Inc.*,
No. 03-CV-4990, 2007 U.S. Dist. LEXIS 11893, 2007 WL 586720, at *7
(E.D.N.Y. Feb. 20, 2007)……………………………………………………8, 12

*Emamian v. Rockefeller Univ.*,
No. 07 Civ. 3939 (DAB), 2018 US Dist. LEXIS 97674, 2018 WL 2849700, at *16
(SDNY June 8, 2018)……………………………………………………………9

*Fresh Air for the Eastside, Inc. v Waste Mgt. of NY, L.L.C.*,
No. 18-CV-6588 (FPG), 2022 US Dist LEXIS 213605, at *12 (WDNY Nov. 23,
2022) ("*Fresh Air I*")……………………………………………………8, 9, 12

*Gambino v. Payne*,
No. 12-CV-824, 2015 WL 1823754 (W.D.N.Y. Apr. 22, 2015)….........................14

*IntegraMed Am., Inc. v. Patton*,
298 F.R.D. 326, 331 (D.S.C. 2014)……………………………………………16

*Jaffee v. Redmond*,
518 U.S. 1, 15
(1996)…………………………………………………………..9, 10

*John Doe Co. v. United States*,
350 F.3d 299 (2d Cir. 2003)……………………………………………………11

*Kunstler v. City of New York*,
　　No. 04-cv-1145 (RWS) (MHD), 2006 U.S. Dist. LEXIS 61747, 2006 WL 2516625
　　(S.D.N.Y. Aug. 29, 2006) ("*Kunstler II*")……………………………………………8, 9
..
*Lynch v. City of New York*,
　　No. 16-CV-7355 (LAP), 2021 WL 5140728 (S.D.N.Y. Nov. 4,
　　2021)…………………………………………………………………………..16

*Malowsky v Schmidt,*
　　No. 3:15-CV-666, 2017 US Dist LEXIS 229306 (N.D.N.Y. Jan. 9,
　　2017)…………………………………………………………………………….. 11
*Mitchell v. Siersma*,
　　No. 14-CV-6069, 2017 U.S. Dist. LEXIS 109751, 2017 WL 2991425 (W.D.N.Y.
　　July 14, 2017)………… ……………………………..…………………………12

*Munson v. Diamond*,
　　2017 U.S. Dist. LEXIS 85143, 2017 WL 4863096, at *3 (June 1,
　　2017)…………………………………………………………………………9

*Olsen v. cnty. Of Nassau*,
　　615 F.Supp.2d 35, 46 (EDNY 2009)………………………………………9, 15
*Popat v. Levy*,
　　No. 15-CV-1052W(SR), 2020 WL 6465449, at *5 (W.D.N.Y. Nov. 3, 2020), <u>aff'd,</u>
　　No. 1:15-CV-01052 EAW, 2020 WL 7040641 (W.D.N.Y. Nov. 30,
　　2020)………………………………………………………………………16

*In re Priceline.com Inc. Securities Litigation*,
　　233 F.R.D. 83, 85 (D.Conn.2005)…………………………………………...15

*In re Sims*, 534 F.3d 117, 134 (2d Cir. 2008)…………………………………10, 11, 12

*Robertson v. National Basketball Ass'n*
　　*622 F.2d 34, 35-36 (2d Cir. 1980)………………………………………………14*

*Rodriguez v. NNR Glob. Logistics USA Inc.*, No. CV141766JFBAKT, 2016 WL
　　11673310, at *5 (E.D.N.Y. Mar. 31, 2016)………………………………………16

*Smalls v. Fallon*, No. 92CIV.8191(DLC)(BAL), 1995 WL 5847, at *3 (S.D.N.Y. Jan. 5,
　　1995)………………………………………………………………………16

*Tourtelotte v. Anvil Place Master Tenant, LLC,* No. 3:11CV1454, 2012 WL 5471855,
　　(D.Conn. Nov. 9, 2012)…………………………………………………………15

*U.S. Bank Nat. Ass'n v. PHL Variable Ins. Co.*, No. 12 CIV. 6811 CM JCF, 2013 WL
　　1728933 (S.D.N.Y. Apr. 22, 2013)………………………………..………………15

*United States v. Smith*, 789 F.2d 196, 205 (3d Cir. 1986)…………………………...  16, 17

*Cedars-Sinai Med. Ctr. v. Ray*, No. 19 MISC. 129 (PAE), 2019 WL 2420045 (S.D.N.Y. June 10, 2019)……………………………………………………………………..  11

## **<u>Statutes</u>**

Fed.R.Civ.P. 26(c)(1)(D)……………………………………………………………..  14
Fed.R.Civ.P. 30(a)(2)(A)(ii)…………………………………………………………  10
Fed.R.Civ.P. 26(b)……………………………………………………………………  16
42 U.S.C.A. § 290dd-2 (West)……………………………………………………….. 16

## PRELIMINARY STATEMENT

Plaintiff respectfully submits this Memorandum of Law in Opposition to the Motion of Defendants Kennedy, Duda, and Mahunik to compel a second deposition, and production of privileged medical records containing information about treatment for issues entirely unrelated to any claim, defense, or damages issue. Plaintiff further moves for a Protective Order to limit disclosure and use of mental health and substance use records, and to limit the permissible scope of the second deposition to inquiries regarding those records relevant to her physical injuries that were not disclosed prior to her first deposition, and to foreclose further inquiry into her mental health and substance use treatment, gender identity, including gender affirming surgeries unrelated to her claimed damages, and her conviction history involving now-sealed cases.

At the time of this writing, Defense counsel has been privy to a much broader swath of Plaintiff's medical records than are relevant to this case, including improperly disclosed privileged and sensitive records. Defense counsel appears to be interested in accessing and using private and sensitive, but non-probative information, in a second deposition. Plaintiff opposes the Motion to Compel and cross-moves for a Protective Order limiting the disclosure and use of above-referenced records, and limiting the permissible scope of inquiry during a second deposition.

## FACTS

On the morning of September 18, 2015, Ms. Smith was to be released from prison in Upstate New York and transported to Brooklyn. She began the day in the custody of the New York State Department of Corrections and Community Supervision, at Five Points Correctional Facility. As a trans woman who had experienced harassment by both staff and

prisoners, she was mandated to be under a camera order, with video being taken of her at all times. She was taken from her cell in the morning by former CO John Crance, CO Kyle Kennedy, Sgt. Joseph Duda, and CO Steve Mahunik. All parties agree that Ms. Smith was uninjured at that time.

After being strip-frisked, she was taken to Infirmary Room 2 and instructed to shower. It is Plaintiff's contention that when she objected, former CO John Crance punched her multiple times in the left side of the face and head. Ms. Smith then showered. Former CO Crance then applied handcuffs and shackles to her so tightly that she lost circulation in her hands and feet, and the skin on her wrists and ankles was badly abraded. She remained in these over-tight restraints for the duration of her more than five hour transport from Upstate New York to Brooklyn.

Despite the requirement that Ms. Smith was to be videotaped during this entire period, the camera chip is now corrupted. No video record of these events remains, although there is fixed camera footage showing that Ms. Smith began the day without injuries. No credible claim has been made at any time that any Officer observed or heard Ms. Smith harm herself during transport in any manner that could be consistent with her well-documented injuries.

It is uncontested that on the morning of September 18, 2015, upon her arrival at the Five Points infirmary, Ms. Smith had no injuries, and that in the afternoon, she arrived at Parole Area 4 in Brooklyn, NY, with blood on her shirt, and injuries that were described ███████ as "unmistakable." ████████████████

Ms. Smith brought this action against the Defendants, claiming injuries to her wrists, ankles, and face, and garden-variety emotional injuries.

She was deposed after the disclosure of relevant and available medical records, but prior to completion of discovery, in an effort to reach settlement. During deposition, Defense counsel asked for and was given releases for every medical provider mentioned, and even further disclosures have since been made by Plaintiff. Ms. Smith has now disclosed essentially all of her medical records, including many hundreds of pages that certainly fall beyond even the broad scope of Rule 26. Although she is alleging only "garden-variety" emotion damages, and not the kind of specific psychological damages that would result in a waiver of psychologist-patient privilege, a significant number of records related to her mental health treatment were improperly disclosed, and have been made the subject of a "clawback" letter.

Ms. Smith is withholding two sets of records, and requesting clawback and destruction of another set, as being protected by psychologist-patient and statutory privileges. Additionally, she argues that the records sought are irrelevant to any claim or defense, not proportional to the needs of the case, useless with respect to resolving any issue, and burdensome to her in a manner that far outweighs any potential litigation benefit. These records thus lie beyond the scope of discovery.

Defense counsel contends that all such records must be disclosed, and wishes to re-depose her with no apparent limits on the scope of inquiry. Plaintiff asks this Court to deny the Motion to Compel production of the withheld records, and to issue a Protective Order mandating destruction of the improperly disclosed records and setting appropriate limits on the topics and records to be examined during the second deposition.

## **ARGUMENT**

### **POINT 1. DEFENDANTS MOTION TO COMPEL A SECOND DEPOSITION SHOULD BE DENIED AS MOOT, AS PLAINTIFF CONSENTS TO A SECOND DEPOSITION.**

As has been said before, in conferences before this Court, meet-and-confers and emails with Defense counsel, and in written updates filed to the docket: Plaintiff's counsel consents to re-producing Ms. Smith for a limited second deposition. ECF 72.

Federal Rule of Civil Procedure 30(d)(1) presumptively limits the total time available for deposition to seven hours, of which Defense counsel has engaged four. We propose, in light of the recently disclosed medical records, to hold a further hour of deposition. In the event that Defense counsel can demonstrate a quantity of relevant material that would require the further full three hours of deposition, we would consent, but no such showing has been made.

The detailed history of disclosure, and efforts to resolve disputes over relevance and the scope of any second deposition are more completely set forth above, but from March 3, 2022 through the present, all counsel have sincerely endeavored but ultimately failed to come to agreement on these issues. Defense counsel has said that a second deposition is necessary "to obtain all information relevant to Plaintiff's claims, specifically damages" (Dkt. 85) and Plaintiff does not take exception to this, in principle. While questions remain as to the appropriate scope of questioning, Plaintiff consents to being re-produced for a second deposition.

As Plaintiff's counsel consents to a limited second deposition, Defendant Kennedy, Duda, and Mahunik's Motion to Compel a second deposition should be denied as moot.

**POINT 2. THE COURT SHOULD DENY DEFENDANTS' MOTION TO COMPEL THE PRODUCTION OF IRRELEVANT, PRIVATE, PRIVILEGED SUBSTANCE ABUSE AND MENTAL HEALTH TREATMENT RECORDS.**

After Plaintiff's first deposition on March 7, 2022, Defendants requested and were given releases for Plaintiff's medical records only, in a good faith effort to demonstrate that no relevant treatment of claimed injuries had been improperly withheld. Defense counsel sought and received hundreds of pages of Ms. Smith's records. Among the disclosures they received was a

set of records from Housing Works, in which were included records of therapy notes and mental health treatments. These records were integrated into properly disclosed medical records, and it was not immediately evident to counsel that these records belonged to a category of sensitive health information to which Defendants had not been given access, and to which they were not entitled. As soon as counsel realized that Defendants were in possession of improperly disclosed records, Plaintiff subjected those records to a "clawback" letter, dated October 20, 2023. Defendants have not in any way responded to or acknowledged receipt of this letter.

Defendants have long been on notice that Ms. Smith has not waived the privileges associated with her mental health and substance use treatment records, and should be aware that nothing in those records is related to the events at issue or the injuries claimed, placing such matters beyond the scope of discovery.

Although Defendants have styled it as a motion to compel disclosure of "medical" records, Defendants have moved to compel Ms. Smith to produce 70 pages of private, privileged records related to substance abuse and related mental health treatment she received in 2017-2018. *See* Defendants' MOL Point II at pp. 8-9. Defendants have also moved to compel production of "all medical records not previously disclosed." *See* Defendants' MOL Point II at p. 8. Defendants do not cite a single case in support of their application.  Rather, they simply include substance use records in the category of "medical records," and make the speculative and conclusory claim that Ms. Smith's substance use history "necessarily impacts her ability to treat her injuries" and mitigate damages. *See* Defendants' MOL Point II at p. 9. This implies a claim of worsening damages that Ms. Smith herself is not making, and that requires a clinical opinion that she is not in any way qualified to offer at a deposition.

Plaintiff's substance use, if any, could not possibly have any bearing on this issue. Ms. Smith was in DOCCS custody when the assault that is the subject of this lawsuit occurred on September 18, 2015 She was not using or abusing substances at that time, when she gave statements regarding the incident to DOCCS investigators on the date of the incident or October 27, 2015, or when she testified in this matter on March 7, 2022. In light of her deposition testimony describing her inquiries into treatment for the injuries to her cheek, there is not a compelling reason to believe that any later substance use or sobriety either exacerbated damages or led to a failure to mitigate damages. The records sought are not at all required for Defense counsel to inquire about the underlying anxiety he alleges to have led to what he characterizes as a failure to mitigate. In the absence of anything more than speculation to establish that this information could be relevant to any party's claims or defenses, the extreme burden to Ms. Smith's privacy interests, and the lack of usefulness to resolving any issue, no reasonable reading of Rule 26 would authorize intrusion into these records. *See Benitez v. Lopez*, No. 17-CV-3827-SJ-SJB, 2019 WL 1578167, at *2 (E.D.N.Y. Mar. 14, 2019).

Not only are these records simply outside the scope of discovery, many of the records sought by the Defense are also protected under a strong statutory privilege created by 42 U.S.C.A. § 290dd-2 (West), a statute covering substance use treatment programs supported in any measure by the federal government, that is intended to ensure that people in need of assistance do not avoid seeking treatment for fear of stigma. (See *United States v. Smith*, 789 F.2d 196, 205 (3d Cir. 1986), finding that "the records of patients in drug rehabilitation programs that are assisted by the federal government must be kept confidential.").

In fact, such records may be disclosed only on consent of the patient or "If authorized by an appropriate order of a court of competent jurisdiction granted after application showing *good*

*cause therefor*, including the need to avert a substantial risk of death or serious bodily harm." *Id.*, emphasis added. The kind of good cause contemplated by the statute simply does not exist here, and it would be frankly unsupportable to claim otherwise.

Even more instructive, the public interest in protecting this confidentiality is so strong that it has been found to outweigh even the right of a criminal defendant to impeaching a prosecution witness. See *Smith*, *supra*. As pointed out by the *Smalls* Court, "the rationale of *Smith* is of particular interest here because, if prejudice to a public interest requiring confidentiality outweighs the interests of a defendant in a criminal case, the same result should apply *a fortiori* in a civil case, where no liberty interest of the party seeking disclosure is at stake. *Smalls v. Fallon*, No. 92CIV.8191(DLC)(BAL), 1995 WL 5847, at *12 (S.D.N.Y. Jan. 5, 1995).

Here, Ms. Smith's records are indeed sheltered under this statute. Defendants have proposed no good cause that even approaches the "risk of death or bodily harm" that would justify vitiating the statutory privilege. Nor are there any benefits to unveiling these records that could counter-balance Ms. Smith's privacy interest under the privilege.

Nearly all of the records sought are relevant to treatment wholly unrelated to her injuries or damages, and were generated at minimum over a year after the complained-of incident. Defendants have proffered no factual predicate for a finding that Plaintiff's status at some other time from the complained-of assault would impair her ability to accurately understand, recall, or relate what she experienced on the day of the incident, and the records they seek would not shed any light on that issue in any case.

What Defendants do seem to allege is that Ms. Smith's sobriety has in some way impacted her desire to seek treatment for her injuries. They are welcome to question her about that surmise *and in fact have already done so*. (See Dep. Transcript 146:11-147:10). The record clearly

demonstrates that despite her anxiety about going under anesthesia, she has nevertheless screwed up her courage and done so on a number of occasions. The record further indicates that she *has* sought guidance on the treatment of her injuries, and that not only did the doctor from whom she sought such guidance decline to treat those injuries, he declined even to make a note of the conversation. (See Dep. Transcript 142:16-19).

There is no basis for supposing that records sought will contain any information that would be useful in any way to determining whether Ms. Smith's sobriety has made her reluctant to mitigate the ongoing harm consequent to her assault. This ground has already been covered, and nothing in her substance use or mental health treatment records will provide any new territory on which to tread.

In light of the strong privileges to which these records are subject, and clear caselaw limiting the disclosure of such records (while allowing for questioning on the underlying facts) the records are simply not discoverable.

Similarly, Defendants' motion requests medical records "including but not limited to substance abuse records," suggesting their continued interest in production of her mental health treatment records.

Significantly on this point, Plaintiff has limited her emotional distress-based damages claims to seek compensation in this matter for only damages related to "garden variety" emotional distress. Such "…'[g]arden variety' claims are 'claims for 'compensation for nothing more than the distress than any healthy, well-adjusted person would likely feel as a result of being [] victimized [by the alleged misconduct].'" *Fresh Air for the Eastside, Inc. v Waste Mgt. of NY, L.L.C.,* No. 18-CV-6588 (FPG), 2023 US Dist LEXIS 166618, at *22 (WDNY Sep. 19, 2023) ("*Fresh Air II*") (citing *E.E.O.C. v. Nichols Gas & Oil, Inc.*, 256 F.R.D. 114, 121

(W.D.N.Y. 2009) (quoting *Kunstler v. City of New York*, No. 04-cv-1145 (RWS) (MHD), 2006

U.S. Dist. LEXIS 61747, 2006 WL 2516625, at *7, *9 (S.D.N.Y. Aug. 29, 2006) ("*Kunstler II*"),

affirming *Kunstler v City of NY*, 2006 US Dist LEXIS 61747 (SDNY Aug. 29, 2006) ("*Kunstler I*"). Such "garden variety" emotional distress "'claims generally merit $30,000.00 to $125,000.00

awards." *Id.* at *30, quoting *Emamian v. Rockefeller Univ.*, No. 07 Civ. 3939 (DAB), 2018 US

Dist. LEXIS 97674, 2018 WL 2849700, at *16 (SDNY June 8, 2018).

In connection with such claims, "the evidence 'is generally limited to the testimony of the

plaintiff, who describes his or her injury in vague or conclusory terms, without relating either the

severity or consequences of the injury.'" *Fresh Air II*, 2023 US Dist LEXIS 166618, at *22

(quoting *Bick v. City of New York*, No. 95 CIV. 8781, 1998 U.S. Dist. LEXIS 5543, 1998 WL

190283, at *25 (S.D.N.Y. Apr. 21, 1998)). That testimonial evidence is "'typically…not

supported by any medical corroboration.'" *Id.* at *30, quoting *Olsen v. cnty. Of Nassau*, 615

F.Supp.2d 35, 46 (EDNY 2009).

Some examples of the natures and types of emotional injuries that count among such

"garden variety" emotion distress claims cited in *Fresh Air for the Eastside, Inc. v Waste Mgt. of

NY, L.L.C.*, No. 18-CV-6588 (FPG), 2022 US Dist LEXIS 213605, at *12 (WDNY Nov. 23,

2022) ("*Fresh Air I*") include a plaintiff's testimony about "vague and subjective complaints of

insomnia, lower self-esteem, depression, anxiety, and stomach aches and headaches—

unsupported by medical corroboration," *Duarte v. St. Barnabas Hospital*, 341 F.Supp.3d 306,

321 (S.D.N.Y. 2018); testimony about "distress, mental anguish, loss of self-esteem, anxiety,

disturbed sleep, stomach problems, embarrassment, and migraines" without "supporting medical

records," *Munson v. Diamond*, 2017 U.S. Dist. LEXIS 85143, 2017 WL 4863096, at *3

(S.D.N.Y. June 1, 2017); and testimony about "[t]eary eyes, loss of sleep, and a desire for

counseling," *EEOC v. First Wireless Group, Inc.*, No. 03-CV-4990, 2007 U.S. Dist. LEXIS

11893, 2007 WL 586720, at *7 (E.D.N.Y. Feb. 20, 2007).

As explained in *Fresh Air II*, such a "'garden variety' claim has its roots in a broad

psychotherapist-patient privilege protecting 'confidential communications between a licensed

psychotherapist and [his or her] patients in the course of diagnosis or treatment' from compelled

disclosure under Rule 501 of the Federal Rules of Evidence." 2023 US Dist LEXIS 166618, at

*20-21, quoting *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996). "This privilege reflects the

'imperative need for confidence and trust,' as psychotherapy requires an environment 'in which

the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and

fears.'" 2023 US Dist LEXIS 166618, at *21, quoting *Jaffee,* 518 US at 10.

> In addition, the Second Circuit has recognized the risk that allowing discovery into
> mental health records may lead to overly intrusive document demands and interrogatories
> from litigants; for example, defendants might "seek to have the privilege breached
> whenever there is a possibility that the psychiatric records may be useful in testing the
> plaintiff's credibility or may have some other probative value."

*Id.,* quoting *In re Sims*, 534 F.3d 117, 141 (2d Cir. 2008). As a result,

> [t]o mitigate this risk, the Second Circuit has held, in pertinent part, that a plaintiff who
> asserts only "garden variety" emotional distress claims does not waive the
> psychotherapist-patient privilege barring discoverability of health records based solely on
> such "garden variety" damages claims.

*Id.,* citing *In re Sims,* 534 F.3d at 130 and *In re Consol. RNC Cases*, No. 04-cv-7922 (RJS), 2009

U.S. Dist. LEXIS 40293, 2009 WL 130178, at *6 (S.D.N.Y. Jan. 8, 2009).

"However, '[l]ike other testimonial privileges, the patient may [ ] waive the protection' of

the privilege." *Id.,* quoting *Jaffee*, 518 U.S. at 15 n. 14. For example, a plaintiff asserting

emotional distress-related damages that exceed the "garden variety" sort can voluntarily waive

the privilege in order to assert a "non-garden variety" emotional distress claim – such as a claim

that defendants caused Plaintiff post-traumatic stress disorder. In addition to voluntary waiver, a

plaintiff may, in sum, forfeit the privilege by putting certain aspects of their mental condition at issue in the case: "As relevant here, courts in our Circuit 'have long recognized that the protection of the psychotherapist-patient privilege is waived when a plaintiff puts his or her mental condition at issue in the case.'" *Malowsky v Schmidt,* No. 3:15-CV-666, 2017 US Dist LEXIS 229306, at *5 (NDNY Jan. 9, 2017), quoting *Green v. St. Vincent's Med. Ctr.,* 252 F.R.D. 125, 127 (D. Conn. 2008) and citing *John Doe Co. v. United States*, 350 F.3d 299, 302 (2d Cir. 2003) ("noting that '[i]n such circumstances, the rule is perhaps more aptly described as one of forfeiture, rather than waiver'").

"However, in light of the 'transcendent importance of the psychotherapist-patient privilege,' *Jaffee*, 518 U.S. at 11, "the Second Circuit has cautioned that the question of whether this privilege has indeed been forfeited requires careful scrutiny." *Id.* at *6. For example,

> a plaintiff does not forfeit his psychotherapist-patient privilege merely by asserting a claim for injuries that do not include emotional damage; [] a plaintiff does not forfeit th[e] privilege by merely stating that he suffers from a condition such as depression or anxiety for which he does not seek damages; [] a plaintiff may withdraw or formally abandon all claims for emotional distress in order to avoid forfeiting his psychotherapist-patient privilege; and [] a party's psychotherapist-patient privilege is not overcome when his mental state is put in issue only by another party.

*In re Sims*, 534 F.3d 117, 134 (2d Cir. 2008), quoted in *Malowski*, 2017 US Dist LEXIS 229306, at *6. Beyond that, importantly:

> Nor will the assertion of a mere "garden variety" claim for emotional distress—such as that the plaintiff suffered less acute mental injury or generalized emotional distress that was merely "incidental" to defendant's alleged conduct—give rise to forfeiture. *In re Consol. RNC Cases*, 2009 U.S. Dist. LEXIS 40293, 2009 WL 130178, at *6 (S.D.N.Y. Jan. 8, 2009) (observing that the Second Circuit in Sims "squarely endorsed the narrower 'garden variety' approach" to these issues).

*Malowski,* 2017 US Dist LEXIS 229306, at *6-7. Rather, whether forfeiture may be at issue, "the Second Circuit's analysis in *Sims* acknowledges that the question of whether a *forfeiture* of the privilege has occurred requires a factor-based analysis." *Id.* at *9, citing *Equal Emp't*

*Opportunity Comm'n v. Nichols Gas & Oil, Inc.*, 256 F.R.D. 114, 121 (W.D.N.Y. 2009) ("discussing Sims's fairness factors in determining whether a forfeiture of the privilege had occurred").

Among the *In re: Sims* "fairness factors" was that "the plaintiff had explicitly withdrawn any claims for mental injury or any non-garden-variety emotional injury.'" *Id.* at *9, quoting *Sims*, 534 F.3d at 142. That factor is particularly important in certain cases as, where a plaintiff withdraws or abandons their emotional distress claims, or limits them to "garden variety" emotional distress, that plaintiff can avoid any forfeiture that would otherwise be in play. *See, e.g., Malowksi,* 2017 US Dist LEXIS 229306, at *11 (noting that the plaintiff in that case had "declined Judge Peebles's clear offer to withdraw any aspect of his emotional distress claims as a way of avoiding the consequences of forfeiture"). Where – as is the case in this matter - a plaintiff *does* limit their emotional distress claims to no more than "garden variety" claims, "Defendants are entitled to rely on Plaintiffs' representations that they seek nothing more than garden variety damages based upon the alleged impacts" and plaintiffs are typically precluded from offering evidence, whether testimonial or otherwise, inconsistent with those representations. *Fresh Air I*, 2022 US Dist. LEXIS 213605, at *10, *12, citing *Mitchell v. Siersma*, No. 14-CV-6069, 2017 U.S. Dist. LEXIS 109751, 2017 WL 2991425, at *2-3 (W.D.N.Y. July 14, 2017) and explaining that the *Mitchell* Court found that the emotional damages claim before it "amounted to one for 'garden variety' distress, where plaintiff 'explicitly disavowed any emotional distress claims other than garden variety claims' and 'does not intend to offer at trial psychological or medical testimony or records to support [his] claims of emotional distress'"); *E.E.O.C. v. Nichols Gas & Oil, Inc.*, 256 F.R.D. 114, 121 (W.D.N.Y. 2009) (same); and *EEOC v. First Wireless Group, Inc.*, No. 03-CV-4990, 2007 U.S. Dist. LEXIS

11893, 2007 WL 586720, at *7 (E.D.N.Y. Feb. 20, 2007) (noting the plaintiff's "willing[ness] to stipulate to seeking recovery limited to garden-variety claims" in upholding denial of motion to compel in the face of Rule 72 objections).

As Ms. Smith is alleging only garden variety damages, Plaintiff's mental health records are not at issue, and should remain privileged. As noted above, Plaintiff's substance use treatment records are beyond the permissible scope of discovery and are statutorily protected.

To be meaningful and effective, these protections must obtain *before* production of such material, and cannot be adequately enforced *after* material has been produced. To compel production of protected records would be to undermine the "transcendent" privilege that has been time and again affirmed by the Second Circuit – to compel production of protected records would be to disregard their protected status.

Defendants' Motion to Compel production of mental health and substance use records must therefore be denied.

### POINT 3. THE COURT SHOULD GRANT PLAINTIFF'S CROSS MOTION FOA PROTECTIVE ORDER TO PROHIBIT DISCLOSURE OF SUBSTANCE USE AND MENTAL HEALTH RECORDS AND TO LIMIT THE SCOPE OF DEPOSITION.

Plaintiff moves this Court to issue a Protective Order over the documents improperly disclosed to the Defense, for all of the reasons outlined in Point 2 above.

Plaintiff also seeks a Protective Order limiting the scope of inquiry and the topics about which Defense counsel may inquire. As noted, Plaintiff consents to a second deposition, however, it is incumbent upon us under Fed.R.Civ.P. 30(a)(2)(A)(ii), to ensure that any such deposition 1) is not cumulative, 2) is the only method of eliciting the necessary information, and 3) does not intrude impermissibly burden the privacy rights of our client.

The sweep of discovery allowed under Fed.R.Civ.P. 26(b) is admittedly broad. However, it is not unlimited. The Rule allows for the discovery of "any matter *not privileged*" that relates to a *claim or defense* of either party. Furthermore, any disclosure of information and questioning "can only be ordered for "times relevant to this lawsuit," and "the scope of […] deposition must be clearly limited to avoid encroachment on privileged matters." *Smalls v. Fallon*, No. 92CIV.8191(DLC)(BAL), 1995 WL 5847, at *3 (S.D.N.Y. Jan. 5, 1995).

Furthermore, Federal Rule of Civil Procedure 26(c)(1)(D) provides for the issuance of a Protective Order "for good cause… to protect a party or person from annoyance, embarrassment, oppression, or undue burden…".  Fed.R.Civ.P. 26(c)(1)(D). The burden to show good cause lies with the party seeking the Protective Order; courts frequently find that good cause has been shown where the disclosures sought would implicate sensitive matters or cause prejudice or reputational harm, without value to determining any issue.

Because of the "significant potential for abuse in pretrial discovery by depositions, Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Bamonte v. Charatan*, No. 22CIV0795KMKJCM, 2023 WL 4201416, at *5 (S.D.N.Y. June 27, 2023)(internal citations omitted), see also *Robertson v. National Basketball Ass'n*, 622 F.2d 34, 35-36 (2d Cir. 1980), finding that "Protection against unnecessary discovery is discretionary with the trial court...". The calculus involved in making this determination requires balancing "the litigation needs of the requesting party and the protectable interests of the party from whom discovery is sought." *Gambino v. Payne*, No. 12-CV-824, 2015 WL 1823754, at *4 (W.D.N.Y. Apr. 22, 2015) *internal citations omitted*. While the Federal Rules are afforded liberal construction, the Court "must limit the …extent of discovery" where they exceed the bounds of matters relevant to the litigation and trespass impermissibly into the realm

14

of matters that are collateral or unimportant to the litigation, cumulative, privileged, not proportional to the needs of the case, or oppressive. *U.S. Bank Nat. Ass'n v. PHL Variable Ins. Co.*, No. 12 CIV. 6811 CM JCF, 2013 WL 1728933, at \*2 (S.D.N.Y. Apr. 22, 2013). *See also Tourtelotte v. Anvil Place Master Tenant, LLC,* No. 3:11CV1454, 2012 WL 5471855, (D.Conn. Nov. 9, 2012); *In re Priceline.com Inc. Securities Litigation,* 233 F.R.D. 83, 85 (D.Conn.2005)). Discovery demands that are vague, overbroad, and burdensome, objections lodged in Plaintiff's amended response to Defendants' Demands and Interrogatories #2, also require the Court's scrutiny and limitation.

The records sought and the topics likely to be explored at a second deposition, as privileged documents and sensitive topics, with no probative value, unrelated to any claim or defense, and not necessary to determining any fact or resolving any issue, are all of these.

As has been continuously reiterated, Plaintiff Smith is claiming only "garden variety" emotional damages. Ms. Smith has quite intentionally declined to bring emotional distress claims in order to preserve her psychotherapeutic privilege. The evidence of the damages sought, then, is "limited to the testimony of the plaintiff, who describes his or her injury in vague or conclusory terms, without relating either the severity or consequences of the injury." *Olsen v. County of Nassau*, 615 F. Supp.2d 35, 46 (E.D.N.Y. 2009). Inquiry into the specifics of Ms. Smith's mental health and substance use treatment cannot therefore be illuminating with respect to Ms. Smith's claimed damages, which is in fact precisely why the privilege may be preserved.

On the other hand, some of the contemplated topics of the second deposition involve highly stigmatized and sensitive matters, and will yield information that will not serve to do anything but to prejudice Plaintiff.

15

In the very limited description of what Defendants wished to explore in a second deposition, counsel connected "lifestyle choices" with "veracity of claims made," which reads very much like an impermissible effort to find propensity evidence or information that would impugn the Plaintiff's social standing.

Many Courts have analyzed motions for Protective Orders and motions to quash subpoenas using the same framework, language, and standards, which may be illuminating. *See IntegraMed Am., Inc. v. Patton*, 298 F.R.D. 326, 331 (D.S.C. 2014), reiterating that "the scope of discovery allowed under a subpoena is the same as the scope of discovery allowed under Rule 26." Just as a subpoena improperly seeking privileged information, collateral evidence, or impermissible propensity evidence would "have to be quashed," so too would a Protective Order issue to prohibit such a request made under Rule 26. (See, e.g.: *Lynch v. City of New York*, No. 16-CV-7355 (LAP), 2021 WL 5140728, at *5 (S.D.N.Y. Nov. 4, 2021), quashing subpoena and issuing Protective Order under Rule 26 for purposes of maintaining privileged material; *Popat v. Levy*, No. 15-CV-1052W(SR), 2020 WL 6465449, at *5 (W.D.N.Y. Nov. 3, 2020), aff'd, No. 1:15-CV-01052 EAW, 2020 WL 7040641 (W.D.N.Y. Nov. 30, 2020), quashing subpoena and issuing Protective Order to prevent discovery on matters beyond the scope of the litigation that involved efforts to engage with stigmatized information for purposes of gathering propensity evidence; *Rodriguez v. NNR Glob. Logistics USA Inc.*, No. CV141766JFBAKT, 2016 WL 11673310, at *5 (E.D.N.Y. Mar. 31, 2016), foreclosing on discovery likely to implicate peripheral matters while functioning to cause reputational damage to Plaintiff.)

Based on questions asked during the March 7, 2023 deposition and Defendants' Motions, Plaintiff anticipates that Defense counsel will seek to explore not only her mental health and substance use histories, but her ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

███████ and her gender identity, including highly personal matters, such as self-perception and gender affirming surgeries unrelated to her claimed damages. Therefore, just as Plaintiff seeks a Protective Order to limit inquiry into her privileged mental health and substance use treatment history, she asks this Court to set limits on the inquiries that may be made with respect to her gender identity and now-vacated and sealed criminal convictions.

The stigma of allowing deposition about these sensitive topics warrants the issuance of a Protective Order under Federal Rule of Civil Procedure 26(c)(1)(D). The cost of the stigma cannot be balanced out by the probative utility of the disclosure – because there is no probative utility to be had in so inquiring. As noted, there is no reason, for example, that Defense counsel cannot inquire of Ms. Smith about her fear of anesthesia without probing into her substance use treatment or mental health history. And there is nothing to be properly gained by investigating her personal history of unique vulnerabilities, exploitation, and gender transition, which are so far beyond the scope of permissible discovery that even inquiring into them suggests improper use of discovery for purposes of causing reputational harm or prejudice.

On the topic of Ms. Smith's gender-affirming surgeries, when defense counsel first asked if Ms. Smith had undergone any gender-affirming surgeries, Plaintiff's counsel objected and directed Ms. Smith not to answer a limited and specific question about her *being transgender* – not a question about her medical treatment, any relevant surgical procedure, or any other topic, related to her claims or injuries in this case. *See* Dep. 36-37. The question was: "And you have mentioned that you're a part of the transgender LGBTQ community and you identify as a female at this time. Was there a time where you did not identify as a female?" *See* Dep. 36-37. After objecting and making a limited direction not to answer, the parties moved on, and defense

17

counsel questioned Plaintiff extensively about both her status as transgender, as well as her gender-affirming surgeries she has had. *See, e.g.,* Dep. 37-44, 139-148.

In disclosing medical records regarding that physical injury before the deposition, and in interposing objections during the deposition, Plaintiff's counsel consistently took the position that questioning about Ms. Smith's facial silicone implants and any potential surgery related to them were appropriate, but that questions about other gender-affirming surgeries were not, and directed Ms. Smith not to answer pursuant to Fed.R.Civ.P. 30(c)(2), in anticipation of making a motion under Fed.R.Civ.P. 30(d)(3)(A) and/or 26(c)(1)(d) for a protective order. *See, e.g., id.* On Plaintiff's, and Plaintiff's counsel's, view, it is not relevant, or appropriate, to ask Ms. Smith about whether or not, or when, she identified as anything other than female, and that answering the question as posed, or other, similar, irrelevant questions about Ms. Smith's being transgender or about surgeries that do not relate to her injuries claimed in this lawsuit, and such questions are grounds to limit the deposition under Fed.R.Civ.P. 30(d)(3)(A) because they are unreasonably annoying, embarrassing, and/or oppressive. Therefore, to the extent necessary, this portion of the application is the motion Plaintiff's counsel said we would make in this part of Plaintiff's deposition.

As a preliminary matter, Plaintiff *does* consent to discussing those gender affirming treatments that are related to the injuries or damages in this case, and has willingly complied with requests for relevant medical records. Undersigned counsel harbors concerns, however, about Defendants' repeated expressions of curiosity about our client's gender identity, "lifestyle," and conviction history, all of which are as unrelated to this incident as her mental health and substance use treatment histories.

With respect to gender: Questions like those asked during the March 7, 2022 deposition, about gender affirming surgeries unrelated to the claimed damages, and questions about whether Ms. Smith has ever identified as a man, serve no permissible purpose. *See* Smith Dep. at 36:10-14, 39:12-42:19. These questions are disrespectful, and seem to be an effort, however unintentional, to in some way draw a connection between the harm that Ms. Smith alleges and her own gender identity.

It is clear that opposing counsel is acting in good faith, and does not fully recognize the import of some of their inquiries. However, the use of the word "lifestyle" and the statement that Defense wishes to inquire into our client's "lifestyle choices" are troubling. *See* Defendant's Email of February 12, 2023.

We believe that Defendants are unaware of the fraught connotations associated with the phrase "lifestyle," and feel it would therefore be useful to explain, without judgment, that historically the notion that gender identity involves "lifestyle choices" has been used to dismiss the immutability, credibility, and integrity of trans people's gender identity and their identities as a whole. (See, for example, https://glaad.org/reference/terms/, which identifies this term as derogatory, and used to "denigrate LGBTQ people and inaccurately imply that being LGBTQ is voluntary…").

As such, this conceptual vocabulary undermines the ability to take seriously the violence and disenfranchisement that trans people, as a class, face in this society. That is, if trans identity is nothing more than a "lifestyle choice," then any discomfort on the part of cisgender people is the result of the (unnecessary) behavior of trans people, and any negative treatment faced by trans people can easily be avoided by simply making different choices. But trans identity is neither a pathology nor an aesthetic decision, any more than is cisgender identity. Trans identity

is, however, highly stigmatized, in consequential and material ways. Especially for trans women of color, the widespread exclusion from housing, education, and economic systems can lead to a number of unique vulnerabilities (homelessness, trafficking, self-medication, etc.) that may *also* be viewed as nothing more than "lifestyle choices." If understood as freely-made choices, as opposed to exploited vulnerabilities or survival strategies, those behaviors can be uncomplicatedly viewed with suspicion and contempt by those in a more privileged position. We wish to insulate our client, who has already suffered much, from questioning along these lines, which we believe will cause reputational harm and impugn her integrity and credibility, and would thus be highly prejudicial, without yielding any useful evidence.

Likewise, during the March 7, 2022 deposition, the Defense also inquired into Plaintiff's history of criminal convictions. After the deposition, in late October, 2022, all of these convictions were vacated and sealed.

Plaintiff therefore asks that Defense be advised to avoid inquiry into topics touching on Plaintiff's mental health, substance use, gender identity/gender affirming treatments unrelated to the injuries alleged in this case, and her prior, now-vacated and sealed conviction history.

Plaintiff further asks that the scope of questioning be limited to questions about *medical* records that: 1) Were not disclosed prior to the first deposition; 2) Are not duplicative of those records that were disclosed prior to the first deposition; 3) Have demonstrable bearing on her injuries, and claims, defenses, and damages and therefore do not unduly burden her privacy rights or function in any manner to stigmatize her or undermine her credibility on the basis of her status as a transgender woman, or a person who has received mental health or substance use treatment services.

In Plaintiff's view, the following records are *potentially* relevant to this matter:

1. Four pages of records from Housing Works, disclosed on March 3, 2022, prior to Plaintiff's deposition (Defense BATES ##s 219-222);

2. Records from maxillofacial CT Scan performed by Dr. Rodriguez ("8/25/22 Rodriguez Records"), the existence of which was known to Defense prior to the March 7, 2022 deposition, which were disclosed within 36 hours of Plaintiff receiving them, and the substance of which is essentially identical to the records created by Dr. Bradley, which were disclosed to Defense prior to the March 7, 2022 deposition;

3. The Bradley CT Scan and related report, disclosed prior to the March 7, 2022 deposition, about which Defendants already had the opportunity to inquire, but about which Plaintiff is not reasonably able or qualified to opine;

4. The records of Plaintiff's visit to Methodist Hospital on the date of the incident, which have been in the possession of all parties since the inception of this case;

5. Defense Bates ##s 517-518, records from the patient assessment of Dr. Tafreshi, Plaintiff's current primary care provider at Bronx-Lebanon Hospital. These records contain a brief synopsis of Plaintiff's mental health history, and mention that she has a pending suit against DOCCS. These were not deemed relevant prior to the March 7, 2022 deposition, and so were not disclosed at that time, and while Plaintiff continues to believe they are not relevant, reasonable minds can differ. Nothing in these records, however, is new information, and questioning on these records would be unnecessarily cumulative.

6. The Beylus Opthalmic Records;

7. Plaintiff Bates #574, Correctional Health Services record indicating that Plaintiff referred in a general way to having been abused by Correctional Officers during her six years in DOCCS, but with no specific mention of this incident. Plaintiff's counsel does not

believe this to be relevant, and the matter of her ongoing abuse in DOCCS custody was already discussed at length during the March 7, 2022 deposition, which would make questioning on this topic cumulative.

8. Plaintiff Bates ##001213-001400, records and photographs from NYU Langone ("10/20/23 Rodriguez Records") regarding gender affirming care recently received by Plaintiff, which were not disclosed prior to the March 7, 2022 deposition because the treatment had not yet taken place.

Of those, the only records that were *not* available to Defense Counsel during the March 7, 2022 deposition are numbers 2, 5, 7, and 8. And of those, the only records not entirely duplicative are those under 5, 7, and 8. These represent a total of 191 pages of relevant records not available during the March 7, 2022 deposition.

Plaintiff's Counsel agrees to reproduce Ms. Smith for questioning on those above-noted relevant records that were not the subject of inquiry during the first deposition. That is, we ask that questioning be limited to the records contained in items 5 and 7, listed above.

As noted, a significant disclosure of records from Housing Works was made to Defense Counsel consequent to their request and accompanying release; the overwhelming majority of those records disclosed were therapy notes to which Defendants were not entitled, and which are, additionally beyond the scope of the claims at issue. Plaintiff does *not* consent to questioning on those records.

As Defense counsel correctly notes, "The Court has discretion to make a determination which is fair and equitable under all the relevant circumstances." *Cedars-Sinai Med. Ctr. v. Ray*, No. 19 MISC. 129 (PAE), 2019 WL 2420045 (S.D.N.Y. June 10, 2019).

In this instance, Plaintiff prevails upon this Court to exercise its considerable discretion to limit the second deposition to questioning on materials and topics that are indeed relevant to Ms. Smith's damages. Defendants' proposed definition of relevance in this regard appears to include much that is cumulative, and that have no bearing on these events, her ability to recall these events, or how much she suffered as a consequence of these events, but that do carry a heavy weight of intrusion and social stigma.

## **CONCLUSION**

For all of the foregoing reasons, and any other that this Court deems just and proper, the Court should 1. Deny Defendant Kennedy, Duda, and Mahunik's Motion to Compel production of records subject to the psychotherapeutic privilege, and otherwise beyond the scope of any issue in this case, 2. Issue a Protective Order over the withheld records, and 3. Limit the scope of deposition to matters that are actually relevant to the claimed damages. In the alternative, Plaintiff requests that the relevant records be reviewed *in camera* for any material that the Court might deem within the appropriate scope of discovery, and that any such material, if found by the Court, be disclosed to the Defense as Confidential.


DATED:        NEW YORK, NY
              November 20, 2023

                                        _/S/_____
                                                Moira Meltzer-Cohen

                                        _____
                                                Gideon Orion Oliver
                                            277 Broadway, Suite 1501
                                              New York, NY 10007
                                                  347.248.6771

23